**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| DANIELLE and JESSIE KAY; JOHN and NANCY MORATIS; KAITLYN SLAVIC; and MARIA IANNONE-ALBERT, <br><br>            Plaintiffs, <br><br> v. <br><br> WEST PENN MULTI-LIST, INC; EVEREST CONSULTING GROUP LP (d/b/a Berkshire Hathaway HomeServices The Preferred Realty); HOWARD HANNA COMPANY (d/b/a Howard Hanna); REEDSTONE, INC. (f/k/a Pirain Enterprises, Inc.) (d/b/a NextHome PPM Realty); MHDM LLC (d/b/a Realty ONE Group Gold Standard); SF, LLC (d/b/a Realty ONE Group Platinum); REALTY ONE GROUP HORIZON, LLC; RIVER POINT REALTY, LLC; BOVARD-ANDERSON CO.; and PRIORITY REALTY, LLC, <br><br>            Defendants. | Civil Action No:  2:23-cv-02061 <br><br><br> Judge William S. Stickman IV |

**REPLY IN SUPPORT OF MOTION BY WEST PENN MULTI-LIST, INC.,
EVEREST CONSULTING GROUP LP, AND HOWARD HANNA COMPANY TO
DISMISS THE SECOND AMENDED COMPLAINT PURSUANT TO RULE 12(b)(6)**

# TABLE OF CONTENTS

**Page**

ARGUMENT ............................................................................................................... 1

I.   Plaintiffs Fail To State An Antitrust Claim ............................................................ 1

  A.   Plaintiffs Lack Antitrust Standing Because They Were Indirect
       Purchasers .................................................................................................1

  B.   Regardless Of Whether The *Per Se* Rule Or Rule Of Reason
       Applies, Plaintiffs' Claim Fails Because They Do Not Plausibly
       Allege An Agreement ..................................................................................4

    1.   Plaintiffs' Conclusory "Group Pleading" Allegations Are
         Insufficient .........................................................................................4

    2.   Defendants' Alleged Participation in WPML Does Not
         Establish An Agreement To Fix Commissions ............................6

  C.   The Rule Of Reason Applies To Plaintiffs' Antitrust Claim
       And Plaintiffs Fail To State A Claim Under The Rule Of Reason
       Because They Do Not Allege A Plausible Market ....................................11

    1.   Plaintiffs Have Not Adequately Alleged A *Per Se* Violation ........11

    2.   The Complaint Fails To State A Claim Under The Rule Of
         Reason Because Plaintiffs Have Not Pleaded A Plausible
         Relevant Market ................................................................................13

II.  Plaintiffs Do Not Defend Their CPL Claim, Which Must Be Dismissed............. 14

III. The Second Amended Complaint Should Be Dismissed With Prejudice .............. 15

CONCLUSION .......................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*3Shape Trios A/S v. Align Technology, Inc.*,
  2020 WL 2559777 (D. Del. May 20, 2020)..........................................................................13

*California v. ARC American Corp.*,
  490 U.S. 93 (1989)..................................................................................................................2

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007)....................................................................................................4, 5, 6, 9

*Big Dog Energy v. PrimeBlock Operations*,
  2023 WL 3645960 (W.D. Pa. May 25, 2023).....................................................................4, 5

*Broadcast Music, Inc. v. Columbia Broadcasting System, Inc. (BMI)*,
  441 U.S. 1 (1979)..................................................................................................................11

*Burnett v. National Association of Realtors*,
  2022 WL 17741708 (W.D. Mo. Dec. 16, 2022)............................................................12, 13

*Burtch v. Milberg Factors, Inc.*,
  662 F.3d 212 (3d Cir. 2011)................................................................................................4, 10

*Centifanti v. Nix*,
  865 F.2d 1422 (3d Cir. 1989)................................................................................................15

*Cole's Wexford Hotel, Inc. v. UPMC*,
  127 F. Supp. 3d 387 (W.D. Pa. 2015)....................................................................................4

*Copperweld v. Independence Tube Corp.*,
  467 U.S. 752 (1984)................................................................................................................5

*Corbin v. Bucks County*,
  2023 WL 8042560 (E.D. Pa. Nov. 21, 2023) ........................................................................5

*Davis v. Holder*,
  994 F. Supp. 2d 719 (W.D. Pa. 2014)..................................................................................15

*Deutscher Tennis Bund v. ATP Tour, Inc.*,
  610 F.3d 820 (3d Cir. 2010)............................................................................................11, 12

*Erickson v. Pardus*,
  551 U.S. 89 (2007)..................................................................................................................5

*Grace v. RE/MAX Holdings,*
    2024 WL 2761188 (N.D. Cal. May 29, 2024) ................................................................1, 6, 7

*Howard Hess Dental Laboratories, Inc. v. Dentsply International, Inc.*,
    424 F.3d 363 (3d Cir. 2005) ................................................................................................2

*Howard Hess Dental Laboratories, Inc. v. Dentsply International, Inc.*,
    602 F.3d 237 (3d Cir. 2010) ..............................................................................................10

*In re Insurance Brokerage Antitrust Litigation*,
    618 F.3d 300 (3d Cir. 2010) ..........................................................................................9, 15

*JD Global Sales, Inc. v. Jem D International Partners,*
    2023 WL 4558885 (D.N.J. July 17, 2023) ..........................................................................5

*Kansas v. UtiliCorp United, Inc.*,
    497 U.S. 199 (1990) ............................................................................................................2

*Kendall v. Visa U.S.A., Inc.*,
    518 F.3d 1042 (9th Cir. 2008) ........................................................................................9, 10

*Leeder v. National Association of Realtors*,
    601 F. Supp. 3d 301 (N.D. Ill. 2022) ..............................................................................2, 3

*Lisowski v. Walmart Stores, Inc.*,
    552 F. Supp. 3d 519 (W.D. Pa. 2021) ..............................................................................14

*McCarthy v. Recordex Service, Inc.*,
    80 F.3d 842 (3d Cir. 1996) ................................................................................................3

*McMillan v. Lycoming County*,
    2024 WL 315725 (M.D. Pa. Jan. 26, 2024) ......................................................................5

*Moehrl v. National Association of Realtors*,
    2023 WL 2683199 (N.D. Ill. Mar. 29, 2023) ....................................................................2

*Moehrl v. National Association of Realtors*,
    492 F. Supp. 3d 768 (N.D. Ill. 2020) ..............................................................................8, 9

*Molinari v. Consol Energy Inc.*,
    2012 WL 5932979 (W.D. Pa. Nov. 27, 2012) ..................................................................14

*Pennsylvania v. Think Finance, Inc.*,
    2016 WL 183289 (E.D. Pa. Jan. 14, 2016) ........................................................................5

*Queen City Pizza, Inc. v. Domino's Pizza, Inc.*,
    124 F.3d 430 (3d Cir. 1997) ............................................................................................14

*Rosebrough Monument Co. v. Memorial Park Cemetery Association*,
    666 F.2d 1130 (8th Cir. 1981) ........................................................................12

*SD3, LLC v. Black & Decker (U.S.) Inc.*,
    801 F.3d 412 (4th Cir. 2015) .....................................................................9, 10

*Sitzer v. National Association of Realtors*,
    420 F. Supp. 3d 903 (W.D. Mo. 2019) ...................................................12, 14

*United States v. Brown University*,
    5 F.3d 658 (3d Cir. 1993) ............................................................................12

*United States v. Gillen*,
    599 F.2d 541 (3d Cir. 1979)..........................................................................11

*Warren General Hospital v. Amgen Inc.*,
    643 F.3d 77 (3d Cir. 2011)..............................................................................4

*Winn-Dixie Stores, Inc. v. Eastern Mushroom Marketing Cooperative*,
    89 F.4th 430 (3d Cir. 2023) ...........................................................................11

*Yu-Chin Chang v. Upright Financial Corp.*,
    2020 WL 473649 (D.N.J. Jan. 27, 2020) ........................................................5

**Docketed Cases**

*Grace v. National Association of Realtors*,
    No. 4:23-cv-06352-HSG (N.D. Cal. Feb. 12, 2024), Dkt. No. 104.........................7

**Statute**

Pennsylvania Unfair Trade Practices and Consumer Protection Law,
    73 Pa. Cons. Stat. § 201-1 *et seq.*......................................................14, 15

Plaintiffs' opposition says next to nothing about the conduct that their complaint actually challenges. Instead, the opposition dwells on cases involving different rules, different markets, and different defendants, and does not address the specific arguments Defendants make here about the defects of this case. None of those different cases and none of Plaintiffs' arguments about those cases suffice to state a claim in this one.

West Penn Multi-List (WPML) is an independent MLS that is not affiliated with the National Association of Realtors (NAR) and has its own rules, including a materially different rule governing buyer-broker commissions than the one at issue in the cases Plaintiffs seek to leverage. Whereas the NAR rule requires home listings on NAR-affiliated MLSs to include blanket offers of compensation to buyer brokers, WPML does not require listings to offer any buyer-broker commission at all and expressly permits negotiation about commissions. In the sole antitrust challenge to an MLS *not* affiliated with NAR and a rule that did *not* require listings to offer any buyer-broker commission, *Grace v. RE/MAX Holdings*, the court dismissed the complaint precisely because of those distinctions. All Plaintiffs say about *Grace* is that it did not include the same steering allegations as this case, but *Grace* in fact involved precisely those allegations. This would-be, but not quite, copycat suit should be dismissed. And dismissal should be with prejudice because Plaintiffs have already amended twice and their list of additional facts they would plead if given another shot confirms that amendment would be futile.

## ARGUMENT

## I.      Plaintiffs Fail To State An Antitrust Claim

### A.      Plaintiffs Lack Antitrust Standing Because They Were Indirect Purchasers

Plaintiffs, home sellers, concede that home sellers do not pay the buyer-broker. Instead, "the Listing Broker [i.e., Seller Broker] … pay[s] the Buyer-Broker." Opp. 7 (quoting Second Am. Compl. (Compl.) ¶¶ 42-46); *see also* Opp. 3 (stating that the listing agreement "authorizes

the listing broker," not the seller, to "mak[e] a unilateral offer of compensation to any broker who represents a buyer"). Thus, Plaintiffs cannot be direct purchasers. *California v. ARC Am. Corp.*, 490 U.S. 93, 97 (1989).

Plaintiffs try an end-run around that obstacle by claiming that home sellers "effectively" pay the buyer broker. Opp. 7 (quoting Compl. ¶ 46). But the entire theory of Plaintiffs' case is that the seller-broker sets a commission (even if zero) for the buyer-broker (if any), which the seller-broker then pays out of the payment she receives from the seller. That is the definition of an indirect purchaser relationship. For example, the Supreme Court in *Kansas v. UtiliCorp United, Inc.*, explained that consumers "ha[d] the status of indirect purchasers" because they were "not the immediate buyers"—despite allegations that the consumers had ultimately "paid 100 percent of the alleged overcharge." 497 U.S. 199, 205, 207 (1990); *see also Howard Hess Dental Labs., Inc. v. Dentsply Int'l, Inc.*, 424 F.3d 363, 373 (3d Cir. 2005) (holding that the plaintiffs were indirect purchasers because "Plaintiffs pay the dealers their usual price, the dealers take their profit, and then the dealers pay [Defendants]").

The only support Plaintiffs offer for their theory are two decisions by the same judge in a different jurisdiction about different rules adopted by a different organization—neither of which addressed the argument Defendants make here: that seller-brokers, not sellers, are the direct purchasers of buyer-broker services. *See* Opp. 6-7 (citing *Moehrl v. Nat'l Ass'n of Realtors*, 2023 WL 2683199, at *19 (N.D. Ill. Mar. 29, 2023); and *Leeder v. Nat'l Ass'n of Realtors*, 601 F. Supp. 3d 301, 309 (N.D. Ill. 2022)). Instead, both decisions addressed (and rejected) a different argument: that home *buyers* are the direct purchasers of buyer-broker services. But Defendants have not made that argument here. And *Leeder*'s reasoning for why home *buyers* are not direct purchasers (which *Moehrl* adopted)—namely, that "the buyer-broker's compensation

comes from" the "single, total commission" paid to the seller-broker, *Leeder*, 601 F. Supp. 3d at 309—does not support the claim that sellers, rather than seller-brokers, are direct purchasers of buyer-broker services.  In fact, the "single, total commission" the seller pays is untethered to buyer-broker services because the seller pays the same commission regardless of whether the buyer even retains a broker.  *See* Compl. ¶ 45.

It does not matter that the listing agreement sets out the buyer-broker commission separately from the seller-broker commission.  The Third Circuit rejected a similar argument in *McCarthy v. Recordex Service, Inc.*, 80 F.3d 842, 854 (3d Cir. 1996).  In that case, the plaintiffs' attorneys had purchased copies of plaintiffs' hospital records for litigation purposes and then billed plaintiffs for the copies.  *Id.* at 845.  Plaintiffs sued the company that had created the medical record copies, alleging it charged supra-competitive fees, and that by paying those fees, they suffered an injury.  *Id.* at 844-845 & n.5.  The Third Circuit held that plaintiffs lacked antitrust standing because they were indirect purchasers, rejecting plaintiffs' argument that "their attorneys merely acted as their agents in purchasing the photocopies"—even where "the costs of the photocopies were passed on to the client on a dollar for dollar basis."  *Id.* at 852-853.  The court analogized the plaintiffs to a passenger in a taxi who is not the direct purchaser of the gas used by the taxi, even if the passenger pays a separate fee for gasoline.  *Id.* at 853 n.18.  The same logic applies here:  The seller is not the direct purchaser of buyer-broker services, even if part of the fee the seller pays her broker is earmarked for any buyer-broker.

Plaintiffs also are wrong (Opp. 7-8) that this question cannot be resolved on a motion to dismiss.  Courts regularly determine whether plaintiffs were indirect purchasers at the motion to dismiss stage where, as here, it is clear from the complaint that plaintiffs are indirect purchasers. For example, the Third Circuit affirmed dismissal of an antitrust claim because the plaintiff was

an indirect purchaser, *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 91 (3d Cir. 2011), and a

judge in this district dismissed antitrust claims as "barred by the indirect purchaser rule," *Cole's*

*Wexford Hotel, Inc. v. UPMC*, 127 F. Supp. 3d 387, 420 (W.D. Pa. 2015).

> **B.**     **Regardless Of Whether The *Per Se* Rule Or Rule Of Reason Applies, Plaintiffs' Claim Fails Because They Do Not Plausibly Allege An Agreement**

To state a viable antitrust claim, Plaintiffs must allege *facts*, not threadbare conclusions,

supporting an agreement among Defendants.  Nothing in Plaintiffs' complaint comes close.  That

is fatal to their claim whether the Court applies the rule of reason (as it should, *see infra* pp.11-

13) or the *per se* rule because "Section 1 claims always require 'the existence of an agreement.'"

*Burch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011) (citation omitted).

> **1.**     **Plaintiffs' Conclusory "Group Pleading" Allegations Are Insufficient**

Rather than dispute that their complaint lumps the Defendants together, Plaintiffs try to

defend that approach as adequate, arguing that group pleading suffices to establish an agreement.

*See* Opp. 17-19.  The Supreme Court has held that it does not.  A "conclusory allegation of

agreement at some unidentified point" without specific allegations about each defendant's

involvement is not sufficient to state a claim under Section 1 of the Sherman Act.  *Bell Atl. Corp.*

*v. Twombly*, 550 U.S. 544, 557, 565 n.10 (2007).  And Plaintiffs are wrong that *Big Dog Energy*

*v. PrimeBlock Operations*, 2023 WL 3645960 (W.D. Pa. May 25, 2023), "rejected" (Opp. 17)

the requirement that plaintiffs alleging a conspiracy in violation of Section 1 of the Sherman Act

must plead facts tying particular defendants to the purported agreement.  Instead, consistent with

*Twombly*, *Big Dog*, which involved a breach of contract claim—not an antitrust claim—simply

held that allegations that Defendants "are not distinct … entities" and instead "jointly act[ed]

together" as a single entity, were sufficient to plausibly allege that "all Defendants were parties"

4

to the contract without identifying each defendant's role.  2023 WL 3645960 at *4.  In this case, where it is undisputed that Defendants are distinct entities, such group pleading does not suffice.[1]

The other cases Plaintiffs cite (Opp. 17-18) to defend their conclusory allegations about "Defendants" as a group are even further afield.  They merely repeat the uncontroversial point that group pleading does not categorically violate Federal Rule of Civil Procedure 8(a) so long as the complaint gives defendants fair notice of the claims against them and the "grounds upon which" those claims rest.  *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Twombly*, 550 U.S. at 555).  But none of these cases denies that plaintiffs alleging a conspiracy in violation of Section 1 of the Sherman Act must plead facts tying particular defendants to the claimed agreement.  Indeed, like *Big Dog*, none of them are antitrust cases.  *See generally Pennsylvania v. Think Finance, Inc.*, 2016 WL 183289 (E.D. Pa. Jan. 14, 2016); *McMillan v. Lycoming Cnty.*, 2024 WL 315725 (M.D. Pa. Jan. 26, 2024); *Corbin v. Bucks Cnty.*, 2023 WL 8042560 (E.D. Pa. Nov. 21, 2023).  One even distinguishes *Copperweld v. Independence Tube Corp.*, 467 U.S. 752 (1984), on the grounds that *Copperweld* "was an antitrust case" that turned on "specific antitrust objectives."  *Think Finance*, 2016 WL 183289, at *18 (citation omitted).  And in the antitrust context, as explained (Mem. 9), *Twombly* itself rejected vague group pleading, affirming dismissal because "the complaint … furnishe[d] no clue as to which of the four [defendants]

---

[1] Other cases that Plaintiffs cite (Opp. 18 n.5) are similarly unhelpful.  Again, neither is an antitrust case.  *Yu-Chin Chang v. Upright Financial Corporation* held that the complaint did not engage in impermissible group pleading because it lumped together two inextricably linked defendants:  an investment firm and its principal, who was alleged to have committed fraud on behalf of the firm.  2020 WL 473649, at *3 (D.N.J. Jan. 27, 2020).  Likewise, *JD Global Sales, Inc. v. Jem D International Partners*, upheld breach of contract and fraud claims collectively alleged against two affiliated entities that formed a single business and the business's president and CEO.  2023 WL 4558885, at *9 (D.N.J. July 17, 2023).

(much less which of their employees) supposedly agreed, or when and where the illicit agreement took place."  550 U.S. at 565 n.10.

Finally, this Court should reject Plaintiffs' suggestion that the complaint's deficiencies are permissible because facts tying individual defendants to the alleged agreement "are known only to Defendants."  Opp. 19.  A plaintiff must have a reasonable basis for its allegations. *Twombly*, 550 U.S. at 556.  That Defendants have control over their own documents does not excuse Plaintiffs' conclusory, generic allegations, which are largely cut and pasted from other complaints challenging other conduct.

### 2. Defendants' Alleged Participation in WPML Does Not Establish An Agreement To Fix Commissions

Even setting the group pleading defect aside, Plaintiffs have not plausibly alleged an agreement to inflate buyer-broker commissions.  This case is like *Grace*, not *Moehrl*, because *Grace* likewise involved a non-NAR affiliated MLS whose rules do not require listings to offer any compensation to buyer brokers.  As in *Grace*, it is implausible that Defendants' alleged adherence to this WPML rule constitutes an agreement to set commission rates, since brokers can follow it by setting no commission at all.  Plaintiffs do not plausibly allege any other agreement apart from that rule and cannot establish a conspiracy based on participation in a trade association.  And because Plaintiffs do not plausibly allege an agreement among the brokerages, the alleged conspiracy is, at most, a "rimless wheel"—which does not violate Section 1 of the Sherman Act.

*First*, Plaintiffs' attempt to distinguish *Grace* (Opp. 10-11) is unpersuasive.  There, as here, the gravamen of the complaint was that the challenged MLS rules "*require[d]* Class members to make a blanket, unilateral and effectively non-negotiable offer of buyer broker compensation when listing a property" on the MLS.  *Grace*, 2024 WL 2761188, at *3; *see also,*

6

*e.g.*, Compl. ¶ 6 (alleging that the WPML rule "mandates a 'blanket offer'"); *id.* ¶ 94 (alleging that the WPML rule "requir[es] sellers to make a blanket, unilateral offer of compensation"). And there, as here, the independent MLS rules at issue allowed offers of no compensation. *Grace*, 2024 WL 2761188, at *3. The fact that it was "*possible* to offer zero dollars," the court held, "belie[d] the allegation that 'a blanket, unilateral contractual offer of compensation' [was] mandated by the operation of the Rule itself." *Id.*

Resisting this conclusion, Plaintiffs assert that *Grace* "fails to consider the steering that will occur by Buyer-Brokers in directing their clients to listings that offer typical buyer-broker compensation," Opp. 10, and that the steering allegations present here were "apparently absent from the complaint in *Grace*," Opp. 11. That is incorrect. The opinion in *Grace* expressly acknowledged that complaint's allegation—borrowed here—that the challenged rule "wrongly motivates buyers' agents to steer their clients towards listings where they will make a greater margin." 2024 WL 2761188, at *1 (quoting the complaint at ¶¶ 10, 18, 20). In fact, the complaints include virtually identical paragraphs describing how steering allegedly causes inflated commissions, *compare* Compl. ¶ 91 *with Grace*, No. 4:23-cv-06352-HSG, Dkt. No. 104 (N.D. Cal. Jan 12, 2024), at ¶ 119, and the complaint in *Grace* contains even more references to "steering" than the complaint here, *see id.* ¶¶ 20, 28, 119, 120, 121. Plaintiffs' suggestion that the *Grace* Court dismissed the complaint with "the option to amend to make it more like the complaint here," (Opp. 11) therefore is belied by the *Grace* complaint and decision, which Defendants attach. Unlike in *Grace*, these Plaintiffs have already amended their Complaint multiple times. There is no reason to believe further leave to amend the Complaint would be anything but futile; indeed, none of Plaintiffs' proposed amendments (Opp. 20 n.6) are even about steering. *See infra* p.15.

*Second*, *Moehrl v. National Association of Realtors*, 492 F. Supp. 3d 768 (N.D. Ill. 2020) does not support Plaintiffs.  Again, *Moehrl* considered a challenge to a set of NAR rules that require home listings on NAR MLSs to include blanket offers of compensation to buyer brokers, *id.* at 774, while WPML does not require listings to offer any buyer-broker commission at all and expressly permits negotiation, Mem. 4 (citing Compl. ¶¶ 62-63).  Plaintiffs claim that "the only real distinction" between the NAR rules challenged in *Moehrl* and WPML's Commission Disclosure Rule is that "those rules required Listing Brokers to make some non-zero offer of compensation, however minimal (even $.01), instead of nominally permitting no offer of compensation to the Buyer-Broker."  Opp. 10.  That is incorrect.  The *Moehrl* plaintiffs alleged that NAR and brokerage defendants engaged in a conspiracy by "adopting and enforcing Section 2-G-1" of the NAR Handbook, which required blanket offers of compensation, "*and other rules restraining the negotiation of buyer-broker commissions*," 492 F. Supp. 3d at 776 (emphasis added)—rules that WPML does not have.  Here, by contrast, Plaintiffs stress that the claimed conspiracy stems entirely from the purely informational disclosure requirement.  They say "all that matters is the requirement of disclosure" because that requirement enables brokers to steer clients towards homes offering higher commissions, somehow resulting in a standard commission rate.  Opp. 10.

That theory is not plausible, as Defendants have explained (Mem. 10).  Plaintiffs allege that "the steering effects" of WPML's disclosure requirement "ensure[] that virtually no Seller or Listing Broker will provide for a buyer broker commission that is significantly out of line with what is 'typical' or 'customary.'"  Compl. ¶ 93.  However, Plaintiffs fail to plead any facts demonstrating that steering actually occurs or explain how the allegedly "typical" or "customary" rates are set.  And despite their allegations of fixed rates, Plaintiffs themselves paid

different commission rates to their listing brokers and different portions were "earmarked" for the buyer broker, *see* Mem. 4 (citing Compl. ¶¶ 19-22)—a point that the opposition does not (and cannot) explain.  Further, Plaintiffs' own allegation that many prospective homebuyers select a home online before retaining a buyer-broker, Compl. ¶ 87, undermines their theory that the challenged rule causes buyers to steer their clients' home choices based on commission rates. *Moehrl* acknowledged that "the risk of steering may be low for homebuyers who locate their home through an online website."  492 F. Supp. 3d at 784 n.8.

*Third*, that Defendants participated in WPML and adopted its rules does not suffice to plead an agreement in violation of Section 1 of the Sherman Act.  *See* Mem. 12-14.  Plaintiffs' attempt (Opp. 12) to distinguish *In re Insurance Brokerage Antitrust Litigation*, 618 F.3d 300, 349-350 (3d Cir. 2010) fails.  Whether the allegation is that individual members of an organization adopted the group's "suggestions" (as in *In re Insurance Brokerage Antitrust Litigation*) or its "rules" (as here), is irrelevant.  The existence of a conspiracy turns on whether there was a "meeting of the minds" rather than "merely parallel behavior," *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d at 362 (quoting *Twombly*, 550 U.S. at 557), not whether the parallel behavior is following "rules" or "suggestions."  Likewise, the allegation that Defendants here "have come together to promulgate rules" (Opp. 12) does not distinguish this case from *In re Insurance Brokerage Antitrust Litigation*, which held that similar allegations—"that the defendant brokers collaborated in crafting" the challenged policy (that is, the trade group's "suggestions")—were insufficient to plead an agreement.

Plaintiffs also fail to distinguish *SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412 (4th Cir. 2015), and *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042 (9th Cir. 2008), each of which similarly held that a membership-based organization's promulgation of allegedly anticompetitive

rules did not establish a conspiracy between its members, even those who served on the board of directors or were involved in crafting the rule.  *See SD3*, 801 F.3d at 436; *Kendall*, 518 F.3d at 1048.  Plaintiffs' colorful (but meaningless) assertion that Defendants "used the West Penn MLS as a cudgel" (Opp. 12) does not and cannot distinguish *SD3* and *Kendall*.

*Fourth*, Plaintiffs do not seriously dispute that a "rimless wheel conspiracy" does not violate Section 1 of the Sherman Act, *see* Mem. 15 (collecting cases).  Instead, they argue that the conspiracy Plaintiffs allege is not a rimless wheel because the "spokes"—that is, the Brokerage Defendants—do business with one another.  Opp. 13-14 & n.3.  That attempt is unsuccessful.  Pleading a conspiracy among the "spokes" requires plausibly alleging an *agreement* between brokerages, not merely some "connection from one spoke to another," Opp. 14 n.3.  *See Burch*, 662 F.3d at 221.  As explained in Defendants' motion to dismiss (Mem. 14), the complaint does not plausibly allege an agreement among the Brokerage Defendants.  The opposition's unsupported assertions to the contrary—for instance, that Brokerage Defendants "act in a concerted way to deliver inflated payments *to each other*" and "participate in setting inflated commission rates with one another every day," Opp. 13—cannot overcome the complaint's lack of plausible allegations of an agreement.  Finally, Plaintiffs are wrong that whether their alleged conspiracy is a rimless wheel is "appropriately addressed post-discovery." Opp. 14.  Courts regularly and properly resolve this question at the motion to dismiss stage.  *See, e.g.*, *Howard Hess Dental Labs., Inc. v. Dentsply Int'l, Inc.*, 602 F.3d 237, 255 (3d Cir. 2010) (affirming dismissal because "the 'rim' connecting the various 'spokes' is missing").

C.     **The Rule Of Reason Applies To Plaintiffs' Antitrust Claim And Plaintiffs Fail To State A Claim Under The Rule Of Reason Because They Do Not Allege A Plausible Market**

1.     **Plaintiffs Have Not Adequately Alleged A *Per Se* Violation**

The complaint does not plausibly allege that the challenged WPML rule is so obviously anticompetitive that the Court can condemn it as *per se* unlawful.  *See* Mem. 15-23.  Plaintiffs' arguments to the contrary are unavailing.

*First*, Plaintiffs contend that they alleged a horizontal agreement (rather than a vertical one) because their claim is based not only on WPML's Commission Disclosure Rule, but also "the many other [unspecified] anticompetitive acts of Defendants" which led to allegedly inflated commission rates.  Opp. 8.  But allegations about parallel conduct of Defendants that allegedly resulted in inflated commission rates does not suffice under *Twombly*, *see* Mem. 8-15—and certainly does not constitute a *per se* violation of the Sherman Act.

*Second*, Plaintiffs argue that the rule of reason "is not applicable to horizontal restraints, which are 'illegal per se.'"  Opp. 8.  That misstates the law; it is not true that all horizontal agreements are illegal *per se*.  At the very least, Plaintiffs must show a conspiracy to fix prices, *United States v. Gillen*, 599 F.2d 541, 545 (3d Cir. 1979), which they have not done.  *See* Mem. 17-20.  And even price fixing is governed by the rule of reason, rather than being per *se* illegal, if—like the challenged WPML rule, Mem. 20-23—it has compelling procompetitive justifications.  *See Broad. Music, Inc. v. Columbia Broad. Sys., Inc. (BMI)*, 441 U.S. 1, 9 (1979); *Winn-Dixie Stores, Inc. v. E. Mushroom Mktg. Coop.*, 89 F.4th 430, 435 (3d Cir. 2023) (applying rule of reason to allegations of price-fixing by a trade association and its members).  The cases Plaintiffs cite (Opp. 8-9) only further undermine their argument:  Both held that alleged horizontal restraints were not *per se* illegal and had to be evaluated under the rule of reason.  In *Deutscher Tennis Bund v. ATP Tour, Inc.*, the plaintiffs "allege[d] an output-limiting horizontal

restraint," but the court held that "[n]evertheless, the *per se* rule does not apply because for a tennis tour, like other sports leagues, 'horizontal restraints on competition are essential if the product is to be available at all.'"  610 F.3d 820, 830-831 (3d Cir. 2010) (citation omitted). Likewise, in *United States v. Brown University*, the plaintiffs argued that alleged agreements between horizontal competitors constituted "*per se* illegal price-fixing," but the court held that the alleged arrangement "must be judged under the rule of reason."  5 F.3d 658, 671-672 (3d Cir. 1993).  And it emphasized that the Supreme Court has been "hesitant to condemn agreements by professional associations as unreasonable *per se*."  *Id.* at 671; *see also Rosebrough Monument Co. v. Mem'l Park Cemetery Ass'n*, 666 F.2d 1130, 1137 (8th Cir. 1981) ("In analyzing whether a trade association agreement restrains competition in the profession, federal courts have most frequently applied the 'rule of reason.'").

*Third*, Plaintiffs argue that this Court should apply the *per se* rule because another district court evaluating a different rule held that plaintiffs there demonstrated a triable *per se* case at summary judgment.  Opp. 9 (citing *Burnett v. Nat'l Ass'n of Realtors*, 2022 WL 17741708, at *10 (W.D. Mo. Dec. 16, 2022)).  But that only underscores that these Plaintiffs have not plausibly alleged a *per se* violation.  In *Burnett* (which was captioned *Sitzer* at the motion to dismiss stage), the court did not decide on a motion to dismiss that the *per se* rule applied, instead analyzing the claims under the rule of reason.  *See Sitzer v. Nat'l Ass'n of Realtors*, 420 F. Supp. 3d 903, 913 n.3 (W.D. Mo. 2019).  Later, after discovery, the court held that the *per se* rule was applicable because the plaintiffs had "produced evidence that Defendants have stabilized the price of residential real estate brokers' services, as reflected through commission rates."  *Burnett*, 2022 WL 17741708, at *9.  That holding relied on evidence of conduct not alleged here.  For example, the Court relied on evidence that the defendants in *Burnett* "train

associated brokers to set commission rates at 6%, to split commissions equally among Buyer-

Brokers and Seller-Brokers, and to never lower commissions" and evidence that the guidelines

"had the effect of stabilizing commission rates." *Id.* at *10. Here, by contrast, the complaint

does not include any such allegations.

Because Plaintiffs have not adequately alleged a *per se* violation of Section 1 of the

Sherman Act, the rule of reason applies to their claim.[2]

### 2. The Complaint Fails To State A Claim Under The Rule Of Reason Because Plaintiffs Have Not Pleaded A Plausible Relevant Market

The complaint does not plead a plausible relevant market, which Plaintiffs concede (Opp.

15) is their burden under the rule of reason. Plaintiffs' market definition fails for two reasons:

(1) it is too narrow because it does not include all interchangeable options to brokerage services,

and (2) although their claims concern a two-sided market—an MLS, which brings together

buyers and sellers—their allegations entirely ignore the buyer side of that market. Mem. 23-25.

Plaintiffs' primary response is to cite an unpublished District of Delaware case for the

proposition that "courts should deny motions to dismiss unless the alleged market makes no

economic sense under any set of facts." Opp. 15 (quoting *3Shape Trios A/S v. Align Tech., Inc.*,

2020 WL 2559777, at *9 (D. Del. May 20, 2020)). But even that case acknowledges that

dismissal is appropriate where the market definition is "inherently implausible"—which is the

case here, *see* Mem. 23-25. And courts regularly dismiss antitrust claims at the motion to

dismiss stage due to lack of a plausible relevant market. Indeed, the Third Circuit has

specifically held that "[w]here the plaintiff fails to define its proposed relevant market with

---

[2] Plaintiffs label an additional five pages of argument as reasons why the complaint pleads a *per se* violation. Opp. 9-14. But all of this is actually responding to Defendants' argument that Plaintiffs fail to allege an agreement, and so Defendants have addressed these points above. Even if Plaintiffs were correct on all of these points—which they are not—that would only establish that the complaint alleges an agreement, not that it alleges a *per se* violation.

reference to the rule of reasonable interchangeability … or alleges a proposed relevant market that clearly does not encompass all interchangeable substitute products even when all factual inferences are granted in plaintiff's favor, the relevant market is legally insufficient and a motion to dismiss may be granted." *Queen City Pizza, Inc. v. Domino's Pizza, Inc.*, 124 F.3d 430, 436, 441 (3d Cir. 1997) (affirming dismissal for failure to plead a valid relevant market and collecting cases); *see also Molinari v. Consol Energy Inc.*, 2012 WL 5932979, at *7 (W.D. Pa. Nov. 27, 2012) (dismissing complaint because the proposed market definition was too narrow).

Plaintiffs again revert to reliance on the NAR cases, claiming that *Sitzer* and *Moehrl*— where different courts evaluated different challenges to different rules in different markets— "held that relevant market definitions nearly identical to Plaintiffs' are 'adequately defined.'" Opp. 15.  Neither court specifically addressed the arguments that Defendants make here.

Finally, Plaintiffs argue that Defendants' two-sided market argument is "intensely factual and is not the type of issue that can be resolved at this stage," yet again citing one of the NAR cases.  Opp. 16.  But it is clear from the face of *this* complaint that the market alleged is two-sided, making resolution at the motion to dismiss stage appropriate.

## II.     Plaintiffs Do Not Defend Their CPL Claim, Which Must Be Dismissed

Plaintiffs do not even mention, let alone defend, their claim under the Pennsylvania Unfair Trade Practices and Consumer Protection Law (CPL).  That claim should be dismissed for that reason alone.  *See Lisowski v. Walmart Stores, Inc.*, 552 F. Supp. 3d 519, 525 n.4 (W.D. Pa. 2021) ("[F]ailure to respond to an argument advanced in support of a motion to dismiss results in a waiver of the claim sought to be dismissed." (citation omitted)).  And, as Defendants explained (Mem. 25-30), the complaint fails to plausibly state a CPL claim.  The complaint does not identify any representation made to Plaintiffs by any Defendant, and therefore necessarily does not allege any deceptive conduct by Defendants or justifiable reliance by Plaintiffs.  The

CPL's private right of action does not extend to Plaintiffs because they did not purchase the service at issue—buyer-broker services—from any Defendant. And Plaintiffs also do not allege that they had any commercial dealings at all with West Penn Multi-List or Howard Hanna, which independently defeats their CPL claims against those Defendants.

## III.    The Second Amended Complaint Should Be Dismissed With Prejudice

Dismissal should be with prejudice because the list of additional facts Plaintiffs say they would plead if given another chance to amend only illustrates that further amendment would be futile. Opp. 20 n.6. None of their proposed additions—all allegations that particular representatives of Brokerage Defendants have served on the board or as president of WPML, *id.*—fix the problems outlined above. Indeed, Defendants have cited several cases (Mem. 14) holding that allegations that defendants served on the board of an association that allegedly promulgated anticompetitive rules are not sufficient to state a claim under Section 1 of the Sherman Act, and Plaintiffs do not dispute these holdings. *See, e.g.*, *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d at 381 (finding allegations that defendants "sat on [the association's] Board of Directors" and thus "effectively operated and controlled the [association]" insufficient). Accordingly, the Court should dismiss the Second Amended Complaint with prejudice, because a district court may "'properly deny leave to amend where the amendment would not withstand a motion to dismiss.'" *Davis v. Holder*, 994 F. Supp. 2d 719, 727 (W.D. Pa. 2014) (quoting *Centifanti v. Nix,* 865 F.2d 1422, 1431 (3d Cir. 1989)); *see also id.* (dismissing complaint with prejudice because "any attempt at amendment would be futile").

## CONCLUSION

For the foregoing reasons, Plaintiffs' complaint should be dismissed with prejudice.

15

Dated: July 19, 2024

Respectfully submitted,

/s/ Wendelynne J. Newton
BUCHANAN INGERSOLL & ROONEY PC
Wendelynne J. Newton
wendelynne.newton@bipc.com
(Pa. I.D. No. 35163)
Gretchen L. Jankowski
gretchen.jankowski@bipc.com
(Pa. I.D. No. 74540)
Union Trust Building
501 Grant Street, Suite 200
Pittsburgh, PA  15219-443
Tel: (412) 562-8800
Fax: (412) 562-1041

*Attorneys for Defendant West Penn
Multi-List, Inc.*

/s/ Kathy K. Condo
Kathy K. Condo, Esq. (Pa. I.D. No. 34910)
Carla M. Castello, Esq. (Pa. I.D. No. 326808)
BABST, CALLAND, CLEMENTS
   AND ZOMNIR, P.C.
Two Gateway Center, 6th Floor
603 Stanwix Street
Pittsburgh, PA 15222
(412) 394-5400
kcondo@babstcalland.com
ccastello@babstcalland.com

*Attorneys for Everest Consulting Group LP
d/b/a Berkshire Hathaway HomeServices
The Preferred Realty*

/s/ David Z. Gringer
David Z. Gringer*
Emily Barnet*
WILMER CUTLER PICKERING
   HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
(212) 230-8800
david.gringer@wilmerhale.com
emily.barnet@wilmerhale.com

Seth P. Waxman*
Karin Dryhurst*
Claire M. Bergeron*
WILMER CUTLER PICKERING
   HALE AND DORR LLP
2100 Pennsylvania Avenue NW
Washington, DC 20037
(202) 663-6000
seth.waxman@wilmerhale.com
karin.dryhurst@wilmerhale.com
claire.bergeron@wilmerhale.com

Eric G. Soller
Pa. I.D. No. 65560
William Pietragallo II
Pa. I.D. No. 16413
Quintin DiLucente
Pa. I.D. No. 330648
PIETRAGALLO GORDON ALFANO
   BOSICK & RASPANTI, LLP
One Oxford Centre, 38th Fl.
Pittsburgh, PA 15219
(412) 263-1836
EGS@Pietragallo.com
WP@Pietragallo.com
QD@Pietragallo.com

*Attorneys for Howard Hanna Company*

*Admitted pro hac vice*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on July 19, 2024, this document was electronically filed with the Clerk of the Court using the CM/ECF system, which will automatically send email notification of such filing to the attorneys of record registered with the CM/ECF system.

*/s/ David Z. Gringer*
David Z. Gringer