IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANNIA

| | |
|---|---|
| JOHN MORATIS, *et al*, <br><br> *Plaintiffs*, <br><br> v. <br><br> WEST PENN MULTI-LIST, INC, *et al*, <br><br> *Defendants*. | Civil Action No. 2:23-cv-2061 <br><br> Hon. William S. Stickman IV |

## MEMORANDUM OPINION

WILLIAM S. STICKMAN IV, United States District Judge

Plaintiffs, Danielle and Jessie Kay, John and Nancy Moratis, Kaitlyn Slavic, and Maria Iannome ("Plaintiffs"), brought this action against West Penn Multi-List, Inc. ("West Penn MLS") and several real estate brokerages operating in western Pennsylvania, namely: Everest Consulting Group LP (d/b/a Berkshire Hathaway HomeServices The Preferred Realty); Howard Hanna Company (d/b/a Howard Hanna); Reedstone, Inc. (f/k/a Pirain Enterprises, Inc.) (d/b/a NextHome PPM Realty); MHDM LLC (d/b/a Realty One Group Gold Standard); SF LLC (d/b/a Realty One Group Platinum); Realty One Group Horizon, LLC; River Point Realty, LLC; BovardAnderson Co.; and Priority Realty, LLC ("Brokerage Defendants"). Plaintiffs allege that West Penn MLS and Brokerage Defendants conspired to impose and enforce rules and practices in the western Pennsylvania real estate market that forced home sellers to pay artificially inflated commissions on the sale of their homes. They contend that Defendants' actions violated the Sherman Antitrust Act, 15 U.S.C. § 1, and Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("CPL"), 73 P.S. §§ 201-1, *et seq*.

Defendants West Penn MLS, Everest Consulting Group LP, and Howard Hanna Company, ("moving Defendants"), have filed a motion to dismiss (ECF No. 121) arguing that Plaintiffs' Sherman Antitrust claim must fail because Plaintiffs did not allege the existence of an agreement between Defendants. Moving Defendants also argue that Plaintiffs' CPL claim must fail because, in part, the complaint fails to state a claim under the CPL. (*Id.*). The Court agrees with moving Defendants' arguments and, as set forth below, holds Plaintiffs' claims fail as a matter of law. Therefore, moving Defendants' motion will be granted.

## I. Factual Background and procedural history

Plaintiffs are individuals who sold residential real estate listed on West Penn MLS's multiple listing service ("MLS") over the past four years. (ECF No. 104, ¶ 2). MLS services are "cooperative ventures" that allow "real estate brokers serving a common geographical area" to share real estate listings with MLS subscribers. (*Id.* ¶ 51). Brokerage Defendants are real estate brokerages operating in western Pennsylvania who subscribe to West Penn MLS. (*Id.* ¶¶ 1, 34). West Penn MLS is not affiliated with the National Association of Realtors ("NAR"). (*Id.* ¶ 60). It has its own "Rules and Regulations" which differ from the NAR's professional standards. (*Id.*).

The West Penn MLS rule at issue, the buyer broker commission rule, requires the listing broker to:

> include and designate . . . the compensation being offered by the listing broker to the Seller [i.e., Buyer] Broker. This section of the form is mandatory and must be completed. For those listings which do not offer compensation to the Buyer's Agent, this section of the form should not be left blank. Rather, the form should be completed by indicating $0.00 if no compensation is being offered.

(*Id.* ¶ 62). In short, under the West Penn MLS rule, buyer broker commissions are subject to negotiation between the seller and the listing broker. The listing broker may offer the buyer broker no compensation under the West Penn MLS rule. Plaintiffs allege that this rule "shifts a cost to

the seller that would otherwise be paid by the buyer in a competitive market" and thus unreasonably restrains interstate trade and commerce. (*Id.* ¶ 73). Plaintiffs also allege that the challenged rule "has the effect of encouraging 'steering' by buyer brokers because it incentivizes them to direct their clients to properties with higher commission offers." (*Id.* ¶ 6).

On May 29, 2024, Plaintiffs filed a Second Amended Class Action Complaint containing two counts. (*Id.*). Count One alleges that West Penn MLS and Brokerage Defendants unlawfully restrained trade by forcing home sellers to bear the cost of buyer broker fees in violation of the Sherman Antitrust Act, 15 U.S.C. § 1. (*Id.* ¶¶ 129-37). Count Two alleges that West Penn MLS and Brokerage Defendants engaged in deceptive conduct by creating a likelihood of confusion surrounding the "standard" or "typical" commission rate. (*Id.* ¶¶ 138-44).

## II. STANDARD OF REVIEW

A motion to dismiss filed under Federal Rule of Civil Procedure ("Rule") 12(b)(6) tests the legal sufficiency of the complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). A plaintiff must allege sufficient facts that, if accepted as true, state a claim for relief plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court must accept all well-pleaded factual allegations as true and view them in the light most favorable to a plaintiff. *Doe v. Princeton Univ.*, 30 F.4th 335, 340 (3d Cir. 2022); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Although a court must accept the allegations in the complaint as true, it is "not compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (citations omitted).

The "plausibility" standard required for a complaint to survive a motion to dismiss is not akin to a "probability" requirement but asks for more than sheer "possibility." *Iqbal*, 556 U.S. at

3

678 (citing *Twombly*, 550 U.S. at 556). In other words, the complaint's factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations are true even if doubtful in fact. *Twombly*, 550 U.S. at 555. Facial plausibility is present when a plaintiff pleads factual content that allows the court to draw the reasonable inference that a defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678. Even if the complaint's well-pleaded facts lead to a plausible inference, that inference alone will not entitle a plaintiff to relief. *Id.* at 682. The complaint must support the inference with facts to plausibly justify that inferential leap. *Id.*

### III. ANALYSIS

A. <u>Count One: Sherman Act Antitrust Claim</u>

The Court holds that Plaintiffs have failed to plead a plausible claim under the Sherman Antitrust Act because the West Penn MLS buyer broker rule, even when combined with the conduct of moving Defendants, does not establish the existence of an agreement as required by 15 U.S.C. § 1.

Section 1 of the Sherman Act provides that "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is hereby declared to be illegal." 15 U.S.C. § 1. An antitrust plaintiff must plead two elements: (1) "that the defendant was a party to a contract, combination . . . or conspiracy" and (2) "that the conspiracy to which the defendant was a party imposed an unreasonable restraint on trade." *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011). The first element—a contract, combination, or conspiracy—requires "some form of concerted action" which the United States Court of Appeals for the Third Circuit has defined as "unity of purpose or a common design and understanding or a meeting of minds" or "a conscious

commitment to a common scheme." *Id.* (citing *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 315 (3d Cir. 2010)). In other words, § 1 claims always require "the existence of an agreement." *Id.* (citations and internal quotation marks omitted); *see also Howard Hess Dental Labs. Inc. v. Dentsply Int'l, Inc.*, 602 F.3d 237, 254 (3d Cir. 2010) ("Section 1 claims are limited to combinations, contracts, and conspiracies and thus always require the existence of an agreement."); *West Penn Allegheny Health Sys. v. UPMC*, 627 F.3d 85, 99 (3d Cir. 2010) ("To prevail on a section 1 claim . . . a plaintiff must establish the existence of an agreement."). Unilateral action, regardless of the motivation, does not violate Section 1. *Ins. Brokerage*, 618 F.3d at 321.

Plaintiffs allege that by implementing, maintaining, and enforcing the buyer broker rule, West Penn MLS and Brokerage Defendants "require[] sellers to pay Buyer Brokers, to pay an inflated buyer broker commission, and an inflated total commission." (ECF No. 104, ¶¶ 132-33). Further, Plaintiffs allege that the buyer broker rule "mandates a 'blanket offer,' meaning that the same compensation must be offered to every buyer's broker." (*Id.* ¶ 6). As written, the rules do not *require* home sellers to pay a buyer broker commission at all. In fact, the rule expressly permits the listing broker to offer the buyer broker no compensation. (*Id.* ¶ 64). The buyer broker rule simply requires that the listing disclose the compensation, if any, that the buyer broker will receive. (*Id.*).

The instant case is very similar to *Grace v. RE/MAX Holdings, Inc.*, No. 23-CV-06352-HSG, 2024 WL 2761188 (N.D. Cal. May 29, 2024). In *Grace*, the district court dismissed a complaint challenging a similar rule of an independent MLS noting that "[i]f it is *possible* to offer zero dollars, then [a blanket offer] is definitionally not required, regardless of whether [an offer of zero dollars] is actually made very often." *Id.* at *4. Plaintiffs' complaint discusses the NAR

5

buyer broker rule (ECF No. 104, ¶¶ 3, 11), which has been found to violate the Sherman Antitrust Act. The difference between the West Penn MLS rule and the NAR rule is that the NAR rule *required* listing brokers to offer compensation to the buyer broker. It did not permit listing brokers to offer no commission at all. Here, as in *Grace*, the challenged rule permits an offer of zero dollars. Thus, Plaintiffs "have not plausibly alleged that the allegedly anticompetitive arrangement flows from the language (rather than the real-world enactment)," *Grace*, 2024 WL 276118, at *4, of the challenged West Penn MLS rule.[1]

Plaintiffs further argue that the practical implications of the buyer broker rule, not merely the language of the rule itself, perpetuates Defendants' anticompetitive conspiracy. (ECF No. 104, ¶¶ 6, 81, 91-93). They allege that the buyer broker rule "encourages and facilitates anticompetitive steering away from brokers who deviate from the 'standard' commission practices and rates" by enabling the buyer broker to "identify and compare the buyer broker compensation offered by every seller and then steer their clients toward homes offering higher commissions." (*Id.* ¶ 91). Plaintiffs seek to distinguish the instant case from *Grace* by arguing that the *Grace* court did not consider the steering effect. (ECF No. 130, p. 10).

Plaintiffs' allegations regarding steering fail to establish the agreement required to state a claim under the Sherman Antitrust Act. Plaintiffs allege, at most, that steering is a practice enabled by the buyer broker rule. Plaintiffs do not allege any facts that steering is actually driven by an agreement between Defendants. As stated in *Twombly*:

---

[1] Plaintiffs paid different commission rates upon the sale of their properties. The Kays paid a total commission of 5% with 3% earmarked for the buyer broker. (ECF No. 104, ¶ 19). The Moratises paid 7% total commission with 3.5% earmarked for the buyer broker. (*Id.* ¶ 20). Ms. Slavic paid 5% total commission with 2.5% earmarked for the buyer broker. (*Id.* ¶ 21). Finally, Ms. Iannome paid 6% total commission on the sale of her home. (*Id.* ¶ 22). The fact that Plaintiffs paid different total commissions, with different percentages earmarked for the buyer broker, undermines Plaintiffs' claim that Defendants are engaged in a conspiracy to fix commission rates.

> Without more, parallel conduct does not suggest conspiracy, and a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality. Hence, when allegations of parallel conduct are set out in order to make a § 1 claim, they must be placed in a context that raises a suggestion of a preceding agreement, not merely parallel conduct that could just as well be independent action.

550 U.S. at 556-57. "An allegation of parallel conduct is thus much like a naked assertion of conspiracy in a § 1 complaint: it gets the complaint close to stating a claim, but without some further factual enhancement it stops short of the line between possibility and plausibility of 'entitle[ment] to relief.'" *Id.* at 557. Here, Plaintiffs allege that the buyer broker rule encourages and facilitates steering, (ECF No. 104, ¶¶ 6, 91), and "results in steering," (*id.* ¶ 81). However, Plaintiffs stop short of alleging that steering results from an agreement among Defendants. Plaintiffs' complaint merely alleges parallel conduct which, without more, is insufficient to plead a violation of the Sherman Antitrust Act. *See Burtch*, 662 F.3d, at 222 ("Unilateral action, regardless of motivation, is not a violation of Section 1.").

Plaintiffs further allege that West Penn MLS is controlled by a board of directors comprised of the principals, officers, and employees of Brokerage Defendants. (ECF No. 104, ¶¶ 55, 78, 99, 109). The complaint notes that Defendants' "control of the MLS and the rule that all brokers must use the MLS allows Defendants to impose the Buyer Broker Commission Rule and other anticompetitive rules on a class-wide basis." (*Id.* ¶ 99). This allegation does not establish an agreement as required by the Sherman Antitrust Act. As noted above, the buyer broker commission rule is not, standing alone, an agreement to engage in an anticompetitive conspiracy. Thus, even if Defendants enforce the buyer broker commission rule, it does not create an illegal agreement among Defendants. Nor does the complaint allege that Defendants, through their control over West Penn MLS, engaged in an illegal agreement to encourage "steering." While a complaint need not contain detailed "defendant-by-defendant" allegations, the complaint must

plausibly suggest that each defendant joined and participated in the agreement. *In re Processed Egg Prod. Antitrust Litig.*, 821 F. Supp. 2d 709, 719 (E.D. Pa. 2011). Moreover, Defendants' mere membership and participation in a trade association such as the West Penn MLS is insufficient to plausibly suggest an agreement under Section 1. *See Ins. Brokerage*, 618 F.3d at 349; *Alvord-Polk, Inc. v. F. Schumacher & Co.*, 37 F.3d 996, 1008-09 (3d Cir. 1994) ("[I]n assessing whether a trade association (or any other group of competitors) has taken concerted action, a court must examine all the facts and circumstances to determine whether the action taken was the result of some agreement, tacit or otherwise, among members of the association.").

Since the Court holds that Plaintiffs failed to allege the first element of an antitrust claim under 15 U.S.C. § 1 – an agreement – the Court does not reach the issue of whether Plaintiffs alleged an unreasonable restraint on trade. Nor does the Court decide whether Plaintiffs have antitrust standing. For the reasons discussed above, the Court will grant the moving Defendants' motion to dismiss Count One of Plaintiffs' complaint with prejudice.[2]

---

[2] The Court denies Plaintiffs' request to amend their complaint because any amendment by Plaintiffs would be futile in the eyes of the Court. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997) (holding that a court may deny leave to amend for reasons such as undue delay, bad faith, dilatory motive, prejudice, and futility). "An amendment is futile if it merely restates the same facts as the original complaint in different terms, reasserts a claim on which the court previously ruled, fails to state a legal theory, or could not withstand a motion to dismiss." 3 James Wm. Moore et al., *Moore's Federal Practice* ¶ 15.15 (3d ed. 2021). Plaintiffs have failed to establish an agreement as required by the Sherman Antitrust Act. Thus, Plaintiffs' claims fail as a matter of law. Plaintiffs' proposed additions focus on allegations that representatives of Brokerage Defendants have served on the board of directors of West Penn MLS. (ECF No. 130, p. 20 n.6). As discussed above, these proposed additional facts are not sufficient to state a claim under the Sherman Antitrust Act. Therefore, an amended complaint with the proposed averments would still not survive a motion to dismiss for failure to state a claim upon which relief could be granted.

### B. Count Two: Pennsylvania Unfair Trade Practices and Consumer Protection Law Claim

The Court holds that Plaintiffs have failed to plead a plausible claim under the CPL because Plaintiffs failed to allege that Defendants engaged in deceptive or fraudulent conduct, and failed to properly allege justifiable reliance as required by the CPL.

The CPL provides that:

> Any person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by any person of [unfair or deceptive acts or practices] may bring a private action, to recover [damages].

73 P.S. § 201-9.2(a). The CPL defines "unfair or deceptive acts or practices," in relevant part, as "[e]ngaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding." 73 P.S. § 201-2(4)(xxi); (ECF No. 104, ¶ 140). This section of the CPL is often called the "catch-all provision" of the law. *Hunt v. U.S. Tobacco Co.*, 538 F.3d 217, 220 (3d Cir. 2008). To state a cognizable CPL claim, a private plaintiff must establish (1) that the defendant engaged in an activity proscribed under the law, (2) that the plaintiff justifiably relied on the defendant's wrongful conduct or representation, and (3) that the plaintiff suffered harm as a result of that reliance. *Loduca v. WellPet LLC*, 549 F. Supp. 3d 391, 400 (E.D. Pa. 2021); *Hunt*, 538 F.3d at 221 (stating that the requirement of justifiable reliance applies to all substantive subsections under the CPL, fraud-based or not). To prove justifiable reliance, plaintiffs must show that they "bought the product in the first place (or engaged in some other detrimental activity) because of the misrepresentation." *Id.* at 222 n. 4. Alleging a mere causal connection, for instance, proof that a misrepresentation inflated a product's price, thereby injuring the purchaser, is insufficient to state a claim under the CPL. *Id.* Moreover, plaintiffs must allege that they relied on the defendant's deceptive conduct, not merely the conduct or statements of a third party. *Id.*

In relation to their CPL claim, Plaintiffs allege the following facts:

- Plaintiffs retained the services of real estate brokers for personal purposes (to sell their homes). (ECF No. 104, ¶ 141).

- Plaintiffs suffered an ascertainable loss of money in the form of inflated broker commissions on the sale of their homes. (*Id.* ¶ 142).

- The West Penn MLS buyer broker commission rule is "deceptive and creates a likelihood of confusion or of misunderstanding because the average home seller will not know that the 'standard' or 'typical' commission rate urged by their Listing Broker is the result of anticompetitive collusion among brokers." (*Id.* ¶ 143).

- Plaintiffs "justifiably relied on their Listing Brokers as their agents for the sale of their homes and as experts in the field of residential real estate sales." (*Id.* ¶ 144).

Plaintiffs have failed to plausibly allege that Defendants engaged in deceptive or fraudulent conduct as proscribed by the CPL. Plaintiffs allege that the West Penn MLS buyer broker rule is deceptive because home sellers will not know that the rate urged by their listing broker stems from anticompetitive collusion. *Id.* ¶ 143. Even assuming anticompetitive collusion is occurring, the complaint fails to allege how an internal MLS rule requiring disclosure of offered commissions could deceive, confuse, or mislead customers of a broker. The buyer broker rule at issue requires that the listing broker disclose the commission, if any, that will be offered to the buyer broker. The rule is merely a listing requirement, it does not have the capacity to deceive.

Further, to the extent that the alleged deceptive statement is that certain buyer broker commissions are "standard" or "typical," this theory also fails. "General allegations that defendant[s] engaged in deceptive conduct without specifying what that deceptive conduct actually was are insufficient; a plaintiff must identify the specific act, omission or misrepresentation in order to demonstrate that such confusion or misunderstanding was caused by certain acts or omissions on the part of the Defendants." *Doherty v. Allstate Indem. Co.*, No. CV 15-05165, 2016 WL 5390638, at *6 (E.D. Pa. Sept. 27, 2016) (internal citations omitted). Here, Plaintiffs'

allegation that listing brokers urged home sellers that such buyer broker commission rates were "standard" or "typical" is not sufficiently specific. The complaint does not indicate which, if any, Defendant made this representation to which, if any, Plaintiffs. Plaintiffs do not argue that Defendants took any fraudulent actions or made any deceptive omissions. Thus, the Court does not analyze these issues.

Even if Defendants engaged in deceptive conduct as proscribed by the CPL, Plaintiffs have not adequately alleged that they justifiably relied on moving Defendants' deception. Plaintiffs have not alleged that moving Defendants' deception induced them to purchase Brokerage Defendants' services[3] or engage in any other detrimental activity. Plaintiffs leave the Court guessing as to how their knowledge of the West Penn MLS rule would have changed their conduct. Would Plaintiffs have proceeded without a broker, retained a different broker, or simply refrained from selling their homes? The Court does not know because the complaint is silent on this issue. Plaintiffs do not even allege that they knew of the West Penn MLS buyer broker rule when they retained their brokers' services. Moreover, Plaintiffs' allegation that they "justifiably relied on their Listing Broker as their agents," (ECF No. 104, ¶ 144), is not sufficient to allege the reliance element of a CPL claim. "[A] court need not credit a complaint's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997). Further, Plaintiffs do not enjoy a presumption of reliance. Plaintiffs cannot enjoy a presumption of what they must affirmatively prove. *Hunt*, 538 F.3d at 227. The allegation that Plaintiffs paid an inflated commission because of Defendants' alleged deception is

---

[3] For the sake of this analysis, the Court assumes that Plaintiffs directly purchased Brokerage Defendants' services and thus have a private right of action under the CPL. The Court does not decide whether Plaintiffs were purchasers of the services at issue.

the kind of mere causal connection that the Third Circuit found insufficient to state a CPL claim in *Hunt*.[4]

Since the Court holds that Plaintiffs failed to state a claim under the CPL, the Court does not reach the issue of whether Plaintiffs have a private right of action under the CPL. Because Plaintiffs failed to plausibly allege deceptive conduct and justifiable reliance as required by the CPL, the Court will grant the moving Defendants' motion to dismiss Count Two of Plaintiffs' complaint with prejudice.

## IV. CONCLUSION

For the forgoing reasons, moving Defendants' motion will be granted. Orders of Court will follow.

BY THE COURT:

_____
WILLIAM S. STICKMAN IV
UNITED STATES DISTRICT JUDGE

10/7/24
Dated

---

[4] The Court notes that Plaintiffs did not defend, or even mention, their CPL claim in Plaintiffs' Response in Opposition to Dismiss Second Amended Complaint. (ECF No. 130). The Court chose to analyze the CPL claim but notes that it could have treated the CPL claim as abandoned because Plaintiffs failed to address Defendants' motion to dismiss. *Lisowski v. Walmart Stores, Inc.*, 552 F. Supp. 3d 519, 526 n.4 (W.D. Pa. 2021) (stating that failure to respond to an argument advanced in support of a motion to dismiss results in a waiver of the claim sought to be dismissed).